UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FORESTAL GUARANI S.A., | CIVIL ACTION No: 03 cv 4821 |
| Plaintiff, | Hon. Joseph A. Greenaway, Jr., U.S.D.J. |
| v. | Hon. G. Donald Haneke, U.S.M.J. |
| DAROS INTERNATIONAL, INC., | |
| Defendant. | |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

REED SMITH LLP
*Formed in the State of Delaware*
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey  08540
Tel. (609) 987-0050
Fax. (609) 951-0824
Attorneys for Defendant, Daros
International, Inc.

<u>**Of Counsel and on the Brief**</u>:
Daniel Mateo (DM-3673)

<u>**On the Brief**</u>:
Janett D. Pateiro (JP-9442)

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT .......................................... 1

PROCEDURAL HISTORY ............................................. 2

STATEMENT OF MATERIAL FACTS .................................... 6

LEGAL ARGUMENT ................................................. 9

    THE SUMMARY JUDGMENT STANDARD ............................ 9

    POINT I ................................................. 10

        DAROS IS ENTITLED TO SUMMARY JUDGMENT BECAUSE
        THERE IS NO WRITTEN CONTRACT BETWEEN THE PARTIES .... 10

            A.  Background On The CISG. .................... 11
            B.  The CISG Governs This Dispute. ............. 13
            C.  The CISG Preempts Forestal's State
                Common Law Breach of Contract Claim ....... 14
            D.  The CISG, As Adopted and Modified by
                Argentina, Requires a Contract for The
                Sale of Goods To Be In Writing ........... 15

    POINT II ................................................ 17
        FORESTAL HAS FAILED TO PRODUCE ANY CREDIBLE
        EVIDENCE TO SUBSTANTIATE ITS CLAIM ................. 17

            A.  The Invoices Produced Do Not Establish
                A Contract ............................... 18
            B.  The Zanek Certification Upon Which
                Forestal's Claim Is Based, Is
                Incomplete and Insufficient .............. 22
            C.  The Court Should Grant Daros's Motion
                for Summary Judgment Because Forestal
                Has Failed To Establish the Existence
                of a Genuine Issue For Trial ............. 27

    CONCLUSION .............................................. 29

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ........................ 9

Asante Technologies, Inc. v. PMC-Sierra, Inc., 164 F. Supp. 2d 1142 (N.D.Cal. 2001) .......................... 14

BP Oil International, Ltd. v. Empresa Estatal Petroleos de Ecuador, 332 F.3d 333 (5th Cir. 2003) ..... 13

Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) .......................... 27

Connors v. Fawn Mining Corp., 30 F.3d 483 (3d Cir. 1994) .............................................. 9, 27

Filanto S.P.A. v. Chilewich International Corp., 789 F. Supp. 1229 (S.D.N.Y. 1992) ......................... 14

Gottshall v. Consolidated Rail Corp., 56 F.3d 530 (3d Cir. 1995) ............................................ 9

MCC-Marble Ceramic Ctr. v. Ceramic Nuova d'Agostino, S.p.A., 144 F.3d 1384 (11th Cir. 1998) ................ 19

Michael Halebian N.J., Inc. v. Roppe Rubber Corp., 718 F. Supp. 348 (D.N.J. 1989) ........................... 19

Quiroga v. Hasbro, Inc., 934 F.2d 497 (3d Cir. 1991) ..... 10

## STATE CASES

Coldwell Banker Commercial/Feist & Feist Realty Corp. v. Blancke P.W., LLC, 368 N.J. Super. 382 (App. Div. 2004) ............................................... 21

Huyler Paper Stock Company v. Information Supplies Corporation, 117 N.J. Super. 353 (L. Div. 1971) ........ 20

## FEDERAL STATUTES

15 U.S.C.A. App., Art. 95 ................................ 15

15 U.S.C.A. App., Art. 96 ................................. 15

15 U.S.C.A. App., n1 ................................. 7, 15

U.S. Ratification of 1980 United Nations Convention on
    Contracts for the International Sale of Goods:
    Official English Text, 15 U.S.C.App. ............. 11, 12

United Nations Convention on Contracts for the
    International Sale of Goods ("CISG"), 15 U.S.C. App.
    .................................................. passim

**MISCELLANEOUS**

Peter Winship, Domesticating International Commercial
    Law: Revising U.C.C. Article 2......................... 12

Brigham Young L. Rev. 350, 351 (1999) .................... 11

Federal Rule of Civil Procedure 33(b)(2) ................. 3

    Federal Rule of Civil Procedure 30(b)(6)........... 4,5,6

## PRELIMINARY STATEMENT

Plaintiff Forestal Guarani S.A. ("Forestal") is an Argentinean lumber company that has asserted a breach of contract claim against Defendant Daros International, Inc. ("Daros") for payment of $419,553.71 for wooden finger-joints allegedly sold to Daros for re-sale in the United States.  Now that discovery has closed, Daros has confirmed what it has always known -- Forestal's claim lacks legal substance. Forestal's breach of contract claim is not supported by a written contract between the parties.  The absence of a written contract is fatal to Forestal's claim.

Not only has Forestal admitted the absence of a written contract covering the sale of the goods at issue, but at each turn, Forestal has frustrated Daros's efforts to obtain discovery concerning the underpinnings of Forestal's claim. Despite having multiple opportunities to respond to clear and unambiguous discovery requests, Forestal has flaunted its discovery obligations and refused to produce to Daros the books and records that evidence the alleged amounts due and owing from Daros.  The only documents produced by Forestal to substantiate its claim are a series of unsigned invoices.  Forestal's entire claim rests on these invoices and a deficient certification from Forestal's in-house accountant that does not identify what

1

invoices are unpaid, due and owing.  The evidence produced by
Forestal is insufficient to establish a prima facie claim for
breach of contract and/or establish that the amount claimed is
owed by Daros.

This matter is ripe for summary judgment.  Not only is
there no written contract between the parties, but Forestal has
otherwise wholly failed to support its damages claim and justify
presenting this matter to a jury.

## PROCEDURAL HISTORY

Daros removed this matter to federal court on or about
October 24, 2003, on the basis of federal question jurisdiction
pursuant to the United Nations Convention on Contracts for the
International Sale of Goods, 15 U.S.C. App., International
Contracts, Art. I (the "CISG").  See ¶2 of the Certification of
Daniel Mateo, Esq. ("Mateo Cert."), filed herewith.  After
answering the Complaint, Daros served Plaintiff with
Interrogatories and a Request for Production of Documents.
Among the items Daros requested of Forestal were:

- Any information regarding the terms and conditions of
  the contract alleged in the Complaint and any
  documents that evidence the alleged contract.  See
  Mateo Cert., ¶3;

- All documents, including but not limited to book
  accounts, balance sheets and invoices, evidencing all
  amounts allegedly due from Daros to Forestal under the

2

alleged contract and evidencing what payments have
been made.  <u>See</u> Mateo Cert., ¶3;

- All documents evidencing any written or oral request
  for payment made by Forestal, as alleged in paragraph
  4 of the Complaint.  <u>See</u> Mateo Cert., ¶3;

- All documents evidencing all payments made from Daros
  to Forestal, including but not limited to copies of
  all canceled checks, copies of bank statements showing
  each such payment and any receipts evidencing such
  payments.  <u>See</u> Mateo Cert., ¶3; and

- Forestal's calculation of damages and any documents
  that set forth that calculation.  <u>See</u> Mateo Cert., ¶3.

Forestal failed to timely and adequately respond to Daros's
discovery requests, requiring the Honorable G. Donald Haneke to
enter an Order on June 7, 2004, mandating that Forestal fully
respond to Daros's Interrogatories and Document Requests by June
18, 2004.  <u>See</u> Mateo Cert., ¶4.  Forestal did not respond until
June 30, 2004,--nearly two weeks after it was ordered to do so--
and its responses were incomplete, improper and not certified as
required by Federal Rule of Civil Procedure 33(b)(2).  <u>See</u> Mateo
Cert., ¶5.

Due to Forestal's repeated discovery deficiencies, on
October 5, 2004, this Court ordered Forestal to pay Daros
$5,037.69 in discovery sanctions and gave Forestal yet another
opportunity to respond to Daros's discovery requests.  <u>See</u> Mateo
Cert., ¶6.  To date, however, Forestal has yet to fully respond
to Daros's Document Requests in that:

3

- Forestal has not produced any written contract to support its breach of contract claim;

- Forestal has not produced any documents that show proof of payment, request for payment or responses to requests for payment; and

- Aside from invoices, Forestal has not produced any documents that form the basis of the Certification of accountant Gricelda Beatriz Zanek, upon whose Certification Forestal bases its damages claim.

See Mateo Cert., ¶7.

Unable to substantiate Forestal's claims through the documents produced in discovery, Daros noticed depositions pursuant to Federal Rule of Civil Procedure 30(b)(6). The 30(b)(6) depositions requested, in relevant part, that Forestal produce one or more corporate representatives with knowledge of the following information:

- Forestal's relationship with Daros;

- Forestal's corporate accounting practices, accounts payable and accounts receivable;

- Any communications, contracts, invoices, requests for payment or other documents exchanged with Daros;

- Payments received from Daros on the alleged contract;

- The damages Forestal seeks in this matter from Daros.

See Mateo Cert., ¶8.

Additionally, as part of Daros's 30(b)(6) deposition notice, Daros requested that Forestal produce certain documents, including Forestal's book accounts and balance sheets, documents evidencing Forestal's receipt of all money and/or payments from Daros (including receipt of all wire transfers from Daros) and

4

documents evidencing Forestal's calculation of the amount it alleges Daros owes.  See Mateo Cert., ¶9.

In response to the 30(b)(6) deposition notices, Forestal identified Pedro Juan Lopez Vinader ("P. Vinader"), Christian Lamiaux ("Lamiaux") and Maria Elena Lopez Vinader ("M. Vinader") as corporate representatives with information concerning the categories contained in the notice.  See Mateo Cert., ¶10.  P. Vinader is the President of Forestal's Board of Directors and Forestal's Chief Executive Officer.  See transcript of P. Vinader deposition, attached as Exhibit A to Mateo Cert., 10:17-19, 90:10-12.  Lamiaux is part of Forestal's staff, and was responsible for coordinating and generating the invoices sent from Forestal to Daros, including overseeing the contents of those invoices.  See transcript of Lamiaux deposition, attached as Exhibit B to Mateo Cert., 120:18-20, 122:16-23, 126:5-25; 127:1-4, 169:1-7.  M. Vinader has worked as an independent contractor for Forestal from 2000 to the present and was responsible for handling Forestal's business transactions in the United States from 2000 through 2003.  See transcript of M. Vinader deposition, attached as Exhibit C to Mateo Cert., 22:15-19, 23:12-17.  However, only P. Vinader and Lamiaux testified that they had the authority to testify as corporate representatives.  See Mateo Cert., Exhibit A, 10:4-16; Exhibit B, 20:15-22.  Further, Gricelda Beatriz Zanek, the accountant

who allegedly reviewed Forestal's books and created a financial report upon which Forestal bases its claim, was not offered or made available as a 30(b)(6) witness. <u>See</u> Mateo Cert., ¶14. Despite three days of depositions, Forestal's claims remain unsubstantiated.

Daros now moves for summary judgment with respect to the purported claims asserted in Forestal's Complaint.

<u>**STATEMENT OF MATERIAL FACTS**</u>

Forestal is an Argentinean corporation with its principal place of business in Misiones, Argentina.  Forestal is involved in the manufacture and sale of lumber products.  <u>See</u> Complaint, Introductory Paragraph, ¶1.  In particular, Forestal sells wooden finger-joints.[1]  <u>See</u> Mateo Cert., Exhibit B, 55:6-8.  To assist in the production of the finger-joints, Forestal entered into a business partnership with Fiyoint S.A. ("Fiyoint"), another Argentinean company, pursuant to which Forestal provided Fiyoint with unfinished wood and investment capital.  <u>See</u> Mateo Cert., Exhibit A, 36:16-25, 37:1-2; Exhibit B, 43:11-16, 44:6-11.  Fiyoint in turn used its know-how, machinery and manufacturing facility to process the raw material into finger-

---

[1]   Finger-jointing is a wood processing technique that consists of cutting finger profiles into the ends of wood pieces, and joining them into longer pieces with an adhesive.

6

joints.  See Mateo Cert., Exhibit B, 43:11-25, 44:1-11.  Daros,
a New Jersey based import-export company, helped commercialize
and sell the finger-joints to third-party purchasers in the
United States since neither Finyoint nor Forestal had any
presence in the United States.  See Mateo Cert., Exhibit A,
51:8-13.

Forestal now asserts a breach of contract claim against
Daros, alleging that Daros has failed to pay certain invoices
totaling $419,553.71.  See Complaint, ¶5.  Forestal alleges that
it shipped finger-joints to Daros valued at $1,857,766.06.  See
Complaint, ¶4.  Forestal alleges that Daros has only paid
$1,458,212.35, leaving a balance due of $419,553.71.  See
Complaint, ¶5.  Despite its allegations, Forestal has not and
cannot dispute several material facts.  Namely:

- This matter deals with an international transaction for the
  sale of goods.  See Complaint, generally.

- Both Argentina and the United States are signatories to the
  United Nations Convention on Contracts for the
  International Sale of Goods.  15 U.S.C.A. App., n1.

- There is no written contract between Forestal and Daros.
  See Mateo Cert., Exhibit A, 68:14-24; 152:11-14; Exhibit B,
  35:9-13; Exhibit C, 106:23-25, 107:1.

- Forestal has not identified which invoices are unpaid.  See
  Mateo Cert., Exhibit B, 261:21-25.

- None of the invoices are signed by Daros.

7

- Forestal has not produced any purchase orders, upon which the invoices allegedly are based.  <u>See</u> Mateo Cert., Exhibit B, 256:25, 257:1-9.

- Forestal bases its claim for $419,553.71 37 on the invoices produced and on the certification of Argentinean accountant Gricelda Beatriz Zanek ("Zanek Certification").  <u>See</u> Mateo Cert., Exhibit A, 129:7-15; Exhibit B, 262:22-25, 263:1-9. The Zanek Certification admittedly failed to consider all of the relevant information.  <u>See</u> Mateo Cert., Exhibit B, 205:10-14, 208:22-25, 209:1-2; Expert Report of Allen J. Genaldi ("Genaldi Expert Report"), filed herewith. Specifically, the Zanek Certification notes that it did not consider, in its analysis of Forestal's financial records, all of the relevant data regarding Forestal's sales to the external market.  <u>See</u> B.2 of Certified Translation of Zanek Certification, attached as Exhibit D to Mateo Cert. Forestal alleges that Daros is a an external market customer.  <u>See</u> Complaint, generally.  Thus, the basis of Forestal's claim rests on incomplete information and faulty calculations.

- Aside from invoices, the books and records reviewed by Gricelda Beatriz Zanek ("Zanek") have not been produced in response to Daros's discovery requests.  <u>See</u> Mateo Cert., ¶15.

- Zanek was disqualified as a witness by an Argentinean court, which found that Zanek could not serve as an impartial witness.  <u>See</u> Certified Translation of May 5, 2004 Argentinean Court's Order disqualifying Zanek as a witness, attached as Exhibit F to Mateo Cert.

Accordingly, Daros now requests that this Court grant its

motion for summary judgment.

**LEGAL ARGUMENT**

**THE SUMMARY JUDGMENT STANDARD**

Rule 56 (c) of the Federal Rules of Civil Procedure governs the standard to be employed by courts when addressing summary judgment motions.  Pursuant to Rule 56 (c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c); <u>see also</u> <u>Gottshall v. Consolidated Rail Corp.</u>, 56 F.3d 530, 533 (3d Cir. 1995).  A dispute is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  <u>Connors v. Fawn Mining Corp.</u>, 30 F.3d 483, 489 (3d Cir. 1994) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)).

Further, "[a] fact is material when it might affect the outcome of the suit under the governing law."  <u>Connors</u>, 30 F.3d at 489.  "The moving party has the initial burden of informing the court of the basis for a motion of summary judgment and pointing out those parts of the record which he or she believes demonstrate the absence of a genuine issue of material fact."  <u>Id.</u>  However, "if the moving party can satisfy [its] initial

9

burden, the nonmoving party 'may not rest upon the mere allegations or denials of [its] pleadings, but [its] response ... must set forth specific facts showing that there is a genuine issue for trial.'"  Id. (quoting Gans v. Mundy, 762 F.2d 338, 341 (3d Cir.)); see also Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)(declaring that non-movant may not "rest upon mere allegations, general denials, or...vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment.

### POINT I

**DAROS IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO WRITTEN CONTRACT BETWEEN THE PARTIES.**

Forestal has asserted a breach of contract claim arising out of its alleged sale of goods – in this case, finger-joints — to Daros.  In most of the United States, the sale of goods is generally governed by the Uniform Commercial Code ("UCC").  It is well-settled under the UCC that a contract for the sale of goods valued at more than $500 must be in writing.  See N.J.S.A. 12A:2-201.  While the alleged transaction between Forestal and Daros involves the sale of goods, it is not governed by the UCC. Instead, the transaction giving rise to Forestal's Complaint is governed by the United Nations Convention on Contracts for the International Sale of Goods ("CISG" or the "Treaty"), codified

at 15 U.S.C. Appendix (West Supp. 1991).  The absence of a
written contract under the CISG, as adopted by Argentina,
entitles Daros to summary judgment on Forestal's breach of
contract claim.

**A.   Background On The CISG.**

The CISG is an international treaty that became effective
between the United States and 10 other countries on Jan. 1,
1988.  <u>See</u> 15 U.S.C. Appendix (West Supp. 1991).  Today, the
CISG boasts 65 signatory nations. <u>See</u> *CISG: Table of
Contracting States* (last updated March 10, 2005)
<<u>http://www.cisg.law.pace.edu/cisg/countries/cntries.html</u>.>
Extremely broad in scope, the CISG's rules – unless the parties
agree otherwise in writing – govern all issues of contract
formation and performance of international contracts for the
sale of goods between merchants of signatory states.  <u>See</u> U.S.
Ratification of 1980 United Nations Convention on Contracts for
the International Sale of Goods: Official English Text, 15
U.S.C.App.

The CISG has been hailed as an "international Uniform
Commercial Code capable of reducing international transaction
costs and bringing unity to an extremely disorganized branch of
law."  <u>See</u> Rod N. Andreason, <u>MCC-Marble Ceramic Center:  The
Parol Evidence Rule and Other Domestic Law Under the Convention</u>

on Contracts for the International Sale of Goods, Brigham Young

L. Rev. 350, 351 (1999).  Since Canada, Mexico, and most of the

larger European nations have also adopted the CISG, the CISG

governs a majority of all foreign transactions conducted by the

United States.  See U.S. Dept of Com., Statistical Abstract of

the United States 1997, at 803-06 (117th ed. 1997).  In addition,

some countries have adopted the CISG as their domestic sales

law.  See Peter Winship, *Domesticating International Commercial*

*Law: Revising U.C.C. Article 2 in Light of the United Nations*

*Sales Convention*, 37 LOY.L.REV. 43, 46 (1991).  Further, in the

United States, the Permanent Editorial Board for the Uniform

Commercial Code has used the Convention as a constructive model

for reforming the UCC. See Andreason, Brigham Young L. Rev. at

351.

     The purpose of drafting the CISG was to create a framework

or uniform set of rules to govern international sales contracts.

See U.S. Ratification of 1980 United Nations Convention on

Contracts for the International Sale of Goods:  Official English

Text, 15 U.S.C.A. App.  As Secretary of State George Schultz

wrote to President Ronald Reagan in recommending ratification of

the convention:

          Sales    transactions    that    cross
          international  boundaries  are  subject  to
          legal  uncertainty  -  doubt  as  to  which  legal

system will apply and the difficulty of
coping with unfamiliar foreign law. The
sales contract may specify which law will
apply, but our sellers and buyers cannot
expect that foreign trading partners will
always agree on the applicability of United
States law. Insistence by both parties on
this sensitive point can prolong and
jeopardize the making of the contract.


The Convention's approach provides an
effective solution for this difficult
problem. When a contract for an
international sale of goods does not make
clear what rule of law applies, the
Convention provides uniform rules to govern
the questions that arise in the making and
performance of the contract.

[Letter of Submittal (Aug. 30, 1983), reprinted at 15

U.S.C. Appendix at 364 (West 1998).]

In short, the CISG governs virtually all sales transactions

"between parties whose places of business are in different"

signatory States. See Andreason, Brigham Young L. Rev. at 351.

Indeed, a signatory's assent to the CISG "necessarily

incorporates the CISG as part of that nation's domestic law."

BP Oil Int'l, Ltd. v. Empresa Estatal Petroleos de Ecuador, 332

F.3d 333, 337 (5th Cir. 2003).

B.   The CISG Governs This Dispute.

The CISG applies to "all contracts [for the sale of goods]

between parties with places of business in different nations, so

long as both nations are signatories to the [CISG]." See

13

<u>Filanto S.P.A. v. Chilewich Int'l Corp.</u>, 789 F.Supp. 1229, 1237 (S.D.N.Y. 1992); U.S. Ratification of 1980 United Nations Convention on Contracts for the International Sale of Goods: Official English Text, 15 U.S.C.A. App.[2]  Not only are the United States and Argentina both signatories to the CISG, but the Complaint here arises out of an alleged sale of goods by Forestal, an Argentinean company, to Daros, an entity with its principal place of business in the State of New Jersey.  <u>See</u> Complaint, ¶¶ 1, 2.  Thus, the CISG governs this dispute.

**C.   The CISG Preempts Forestal's State Common Law Breach of Contract Claim.**

The CISG establishes "substantive provisions of law to govern the formation of international sales contracts and the rights and obligations of the buyer and the seller."  <u>See</u> U.S. Ratification of 1980 United Nations Convention on Contracts for the International Sale of Goods: Official English Text, 15 U.S.C.A. App.  Where, as here, a contractual dispute between parties is governed by the CISG, that Treaty preempts any state law that would otherwise govern the action.  <u>Asante Technologies, Inc. v. PMC-Sierra, Inc.</u>, 164 F.Supp.2d 1142, 1147 (N.D.Cal. 2001)(holding that the CISG preempted plaintiff's state law claims for breach of contract); <u>Filanto S.P.A. v.</u>

---

[2]   To date, there is no reported New Jersey or Third Circuit case law interpreting the CISG.

<u>Chilewick Int'l Corp.</u>, 789 F.Supp. 1229, 1237 (S.D.N.Y. 1992)(noting that the CISG is considered "state law" because the "treaties of the United States are as much a part of the law of every state as its own local laws and Constitution.")(internal citation omitted).

Accordingly, Forestal's state law breach of contract claim is preempted by the CISG and must, therefore, be analyzed under the CISG.

**D.    The CISG, As Adopted and Modified by Argentina, Requires a Contract for The Sale of Goods To Be In Writing.**

Article 11 of the CISG provides that "[a] contract of sale need not be concluded or evidenced by writing and is not subject to any other requirement as to form.  It may be proved by any means, including witnesses."  The CISG, however, allowed its signatories to opt-out of certain provisions of the Treaty, including Article 11.  <u>See</u> 15 U.S.C.A. App., Art. 95.[3]  Argentina chose to opt out of Article 11, which allows for the enforcement of oral contracts of sale.  <u>See</u> 15 U.S.C.A. App., n.1.  Thus, as

———————————————

[3]    Specifically, Article 96 provides , in relevant part:
A Contracting State whose legislation requires contracts of sale to be concluded in or evidenced by writing may at any time make a declaration...that any provision of Article 11...of this Convention, that allows a contract of sale or its modification or termination by agreement or any offer, acceptance, or other indication of intention to be made in any form other than in writing, does not apply where any party has his place of business in that State. 15 U.S.C.A. App., Art. 96.

ratified by Argentina, the CISG provides that "a contract of sale . . . to be made in any form other than in writing does not apply where **any** party has [its] place of business in the Argentinean Republic." See 15 U.S.C.A. App., n.1. (emphasis added). Since Forestal's principal and only place of business is in Argentina, the CISG expressly requires that a contract of sale with an Argentinean entity be in writing.

Here, it is undisputed that no written contract exists between the parties as required by Argentina's ratification of the CISG. In fact, all three witnesses produced by Forestal testified as to the non-existence of any written contract between the parties:

> Question: Was this agreement that you've been testifying to between Daros and Forestal Guarani memorialized in a written document?
>
> P. Vinader Answer:  We never signed anything.
> ...
>
> Question: Not a written contract?
>
> P. Vinader Answer:  No.
>
> See Mateo Cert., Exhibit A, 68: 14-24.
>
> Question: Was that relationship ever formalized in any written document that formalizes the relationship?
>
> Lamiaux Answer:  The only document is the verbal agreement.
>
>
> See Mateo Cert., Exhibit B, 35:9-13.

16

Question: Do you know if there was any written
contract between Forestal Guarani and Daros regarding
their relationship?

M. Vinader Answer:  I don't think so.


See Mateo Cert., Exhibit C, 106:23-25, 107:1.


The absence of a written contract violates the CISG as
ratified by Argentina.  Forestal's claim for breach of contract
is, thus, preempted and barred by the CISG.  The Court should,
therefore, grant Daros's motion for summary judgment as a matter
of law.

### POINT II

#### FORESTAL HAS FAILED TO PRODUCE ANY CREDIBLE
#### EVIDENCE TO SUBSTANTIATE ITS CLAIM.

Although the absence of a written contract under the
Argentinean version of the CISG is sufficient by itself to bar
Forestal's breach of contract claim, Forestal has, in addition,
failed to produce any credible, probative evidence to otherwise
establish a claim for breach of contract.  Despite repeated
requests for discovery, Forestal's document production consists
primarily of the unsigned invoices it sent to Daros.  See Mateo
Cert., ¶15.  These invoices are not accompanied by purchase
orders, do not reference purchase orders and are not supported
by even the most basic accounting documents or business records.
See Mateo Cert., ¶16, Exhibit E.  Instead, Forestal's case is

based on a certification of an Argentinean accountant who
apparently reviewed some of Forestal's documents and concluded,
without more, that there is an amount due of $419,553.71.

**A.   The Invoices Produced Do Not Establish A Contract.**

The invoices produced by Forestal in support of its claim
for alleged monies owed do not establish a contract.   In
particular, all of the invoices produced by Forestal are
unsigned, were created unilaterally by Forestal, do not contain
language evidencing, either explicitly or implicitly, that the
invoices reflect the parties' final agreement, and all note the
term of payment as "contado."[4]   <u>See</u> Mateo Cert., Exhibit E.   In
fact, Forestal's reliance on invoices noting the term of payment
as "contado" alone undermines its claim for monies owed, as
"contado" signifies that Daros paid for the goods upon receipt.
Consequently, the invoices do not establish a written agreement
between the parties and suggest that payment was made at the
time the goods were delivered.

Further, the invoices at issue would not establish a
written contract under our domestic law.   Although domestic law
in contradiction with the CISG should not be applied when the

---

[4]      Payments made in the form of "contado" are payments made at
      the time of purchase.   <u>See</u> BUTTERWORTHS SPANISH/ENGLISH LEGAL
      DICTIONARY, Lexis Law Publishers, 1991. In common parlance,
      "contado" means C.O.D. (cash on delivery), i.e. no goods
      delivered until payment is received.

CISG preempts the matter, domestic law <u>not</u> in contradiction with the CISG's text or principles may have some relevance.  <u>See</u> <u>MCC-Marble Ceramic Ctr. v. Ceramic Nuova d'Agostino, S.p.A.</u>, 144 F.3d 1384, 1391 (11th Cir. 1998)(noting that courts "applying the CISG cannot...upset the parties's reliance on the [CISG] by substituting familiar principles of domestic law *when the [CISG] requires a different result")* (emphasis added); Andreason, Brigham Young L. Rev., at 372.

Under New Jersey law, unsigned invoices that do not evidence a final agreement between the parties have been held insufficient to satisfy the Statute of Fraud's writing requirement.  For example, in <u>Michael Halebian N.J., Inc. v. Roppe Rubber Corp.</u>, 718 F.Supp. 348 (D.N.J. 1989), plaintiff distributor of commercial products sued defendant manufacturer alleging, among other things, breach of contract.  Defendant asserted that the parties had not entered into an enforceable contract.  <u>Id.</u> at 362-63.  Plaintiff sought to establish a written contract by introducing an unsigned purchase order and invoice for the sale of goods.  <u>Id.</u> at 363.  The United States District Court for the District of New Jersey held that the purchase order and invoice did not satisfy the Statute of Frauds, as the documents "are not writings in confirmation of the contract, do not indicate that an agreement had been entered into between the parties and [lacked] the signature of the party

19

to be charged." Id. at 364.

Similarly, in Huyler Paper Stock Company v. Information Supplies Corporation, 117 N.J. Super. 353, 356 (L. Div. 1971), plaintiff engaged in the purchase and sale of paper waste and scrap.  Plaintiff's business was "highly competitive" and it was not customary in the trade to have written contracts with the sellers of the paper waste.  Id. at 356.  Defendant was engaged in the business of processing data information cards, which business generated a substantial quantity of paper scrap.  Id. Plaintiff entered into an oral agreement, whereby plaintiff would purchase and install a paper baling press at defendant's plant, and defendant would pay for the baler in the form of a credit to plaintiff against the sales price of the waste which defendant sold to plaintiff.  Id. at 357.  Defendant also agreed to sell all of its paper waste to plaintiff for a period of two years from the time the baler was installed.  Id.

Subsequently, defendant refused to continue selling to plaintiff.  Id. at 358.  Plaintiff sued for defendant's breach of the oral agreement to sell its paper waste to plaintiff for a period of two years.  Id.  Finding that this arrangement constituted the sale of goods over $500, the court held that the Statute of Frauds applied.  Id. at 359.  Plaintiff contended that the statute's requirements were met by plaintiff's purchase invoices, which reflected all the terms of the contract with the

exception of its duration.  Id. at 362.  The court disagreed,
holding that the invoices did not establish a contract, as the
invoices were "authored by plaintiff and none of the invoices
contain the signature of defendant--the party to be charged."
Id. at 363.

Here, the CISG, as ratified by Argentina, mandates the
existence of a written contract to enforce an agreement for the
sale of goods.  The general purpose of requiring a signed
memorandum in writing is to protect against "fraudulent claims."
See Coldwell Banker Commercial/Feist & Feist Realty Corp. v.
Blancke P.W., LLC, 368 N.J. Super. 382, 399 (App. Div. 2004).
Thus, under both the CISG and our domestic law, the invoices
presented by Forestal are insufficient to satisfy the
requirement for a contract in writing.

In support of its damages claim for breach of contract,
Forestal presents its unilaterally created invoices, not signed
by Daros, and devoid of any indication that the invoices are
writings in confirmation of the alleged contract.  See Mateo
Cert., ¶16.  Moreover, Forestal has not even identified which of
the 114 invoices it produced remain unpaid by Daros.  See Mateo
Cert., Exhibit B, 261:21-25.  As such, even under United States
domestic law, Forestal's claim for breach of contract is barred
by the absence of a written contract.  Even if the invoices
constituted contracts, Forestal's claim still fails, as the

invoices are unsigned by the party to be charged –Daros–and do not indicate that they are writings in confirmation of an alleged oral contract.  See Mateo Cert., Exhibit E.

Accordingly, the Court should grant Daros's motion for summary judgment.

**B.    The Zanek Certification Upon Which Forestal's Claim Is Based, Is Incomplete and Insufficient.**

In addition to unsigned invoices, Forestal relies upon the certification of Argentinean accountant Gricelda Beatriz Zanek ("Zanek Certification") to support its claim against Daros for $419,553.17.  Forestal requested that Gricelda Beatriz Zanek ("Zanek"), Forestal's in-house accountant, review its books and records and certify as to amounts Daros owed Forestal.  The Zanek Certification purports to substantiate the outstanding balance claimed by Forestal.  See Mateo Cert., Exhibit A, 129:7-15, Exhibit B, 262:22-25, 263:1-9.  The certification, however, is fatally flawed, as it admittedly relies on incomplete data, and fails to consider key information that would assist the trier of fact in determining what, if any, amount Daros owes Forestal.  Further, aside from Forestal's invoices, none of the documents that form the basis of Zanek's Certification have been produced by Forestal in discovery.  See Mateo Cert., ¶15.

Specifically, Zanek's Certification states that she reviewed Forestal's "book entries in the accounts *Sales to the*

*External Market* and *Debtors by Sales to the External Market*
(copy of invoices, notes of credits, receipts), General Daily
Ledger…" and other financial information.  See Mateo Cert.,
Exhibit D, B.1.  Zanek specifically explains, however, that her
review of Forestal's documents was incomplete and did not
include certain financial information, such that Zanek was
unable "to assert that the declared *Income by Sales to the
External Market* included all of the stated operations during the
examined period."  See Mateo Cert., Exhibit D, B.2. (emphasis in
original).  Indeed, Forestal's claimed transactions with Daros
would have involved sales to the external market, as Forestal is
an Argentinean entity and Daros is a United States entity.
Zanek's failure to review Income by Sales to the External Market
at the very least renders Zanek's Certification incomplete.

     Moreover, Zanek's suitability as a credible witness is
doubtful.  Forestal is currently involved as a defendant in
separate litigation in Argentina where it attempted to introduce
testimony by Zanek to support its defenses.  Plaintiff in that
litigation successfully moved to have Zanek disqualified as a
witness.  See Mateo Cert., Exhibit F.  The Argentinean court
hearing the matter granted the motion, disqualifying Zanek as a
witness.  See Mateo Cert., Exhibit F.  Thus, Zanek's
impartiality and credibility are questionable.  In fact, none of
the assertions contained in her certification have been subject

23

to cross-examination, as she has not been offered by Forestal as a witness. See Mateo Cert., ¶14.

In an effort to conduct its own examination of what amounts, if any, Daros owed Forestal, Daros repeatedly requested-- through interrogatories, document requests and deposition notices-- that Forestal produce its financial books, records, ledgers and any other information that support Forestal's claimed damages. See Mateo Cert., ¶3, 8. Despite these repeated requests, however, Forestal failed to produce any of its books, records and ledgers, and failed to produce Zanek as a witness, despite testifying that it based its claim on Zanek's review of its financial documents. See Mateo Cert., ¶14, 15. In fact, when Daros asked P. Vinader, President and CEO of Forestal, why Forestal had not produced its financial books and records, P. Vinader responded that those documents could only be produced "under the request of a [United States] judge" to an Argentinean judge, and that, further, making copies of those documents was "not practical because…the pages are enormous." See Mateo Cert., Exhibit A, 172:7-25; 173:1-8.

To further test the veracity of the statements contained in Zanek's Certification, Daros retained the services of Grant Thornton, a very respected accounting, tax and business advisory organization. See Genaldi Expert Report. Counsel for Daros

asked Allen J. Genaldi ("Genaldi"), a Director in Grant Thornton's Forensic Accounting and Investigative Services practice, to review and analyze the Zanek Certification as well as the schedules accompanying the Zanek Certification.  See Mateo Cert., ¶19, Genaldi Expert Report, ¶3.  Upon his review of the Zanek Certification, Genaldi concluded that "the Zanek Report is flawed and cannot be relied upon."  See Genaldi Expert Report, ¶5.  Namely, the Genaldi Expert Report finds that "the work performed by Ms. Zanek does not conform to certain standards set forth by the [American Institute of Certified Public Accountants] in the following key areas…--"

- Zanek's Certification fails to identify the applicable auditing standards under which Zanek performed her review;

- Zanek's Certification is inconsistent with attestation or consulting services standards;

- Zanek's work does not conform to United States standards;

- Zanek did not meet the professional standard of care in preparing her certification; and

- Zanek did not meet the "sufficient relevant data" standard in preparing her certification.

See Genaldi Expert Report, ¶6.

The Genaldi Expert Report explains that the Zanek Certification "fails to establish the sufficiency of data used

25

to support the 'certification.'" See Genaldi Expert Report,
¶11. Specifically, the Genaldi Expert Report questions Zanek's
analysis of Forestal's records of its sales to the external
market, and finds the data relied upon by Zanek insufficient.
See Genaldi Expert Report, ¶11. The Genaldi Expert Report
highlights Zanek's admission that her "task of reviewing did not
allow [her] to assert that the declared *Income By Sales to the*
*External Market* included all of the stated operations during the
examined period," and concludes that Daros, as an alleged
external market customer, "may be directly impacted by this
disclosure." See Genaldi Expert Report, ¶11. The Genaldi
Expert Report further concludes that it is Zanek's failure to
examine all of the relevant information as to any amount owed by
Daros that may lead to "false conclusions, rendering the work
performed [by Zanek] insufficient for use as a basis for
conclusions and judgments." See Genaldi Expert Report, ¶11.

The Genaldi Expert Report also analyzes the schedules
attached to the Zanek Certification, which were the only
documents attached to the certification to purportedly buttress
Zanek's findings. See Mateo Cert., Exhibit D. Genaldi notes in
his Report that he was unable to confirm Zanek's findings "based
solely on the information provided in those schedules...that
would independently confirm or impeach Ms. Zanek's basis for her
conclusion about the amount owed" by Daros. See Genaldi Expert

Report, ¶13.  Ultimately, the Genaldi Expert Report finds the Zanek Certification is "inadequate" because the certification fails to contain a "complete statement of all opinions to be expressed and the basis and reasons thereof." <u>See</u> Genaldi Expert Report, ¶13.  (internal quotations omitted.)

Thus, Forestal's reliance on a flawed and incomplete accounting of its books and records further serves to undermine its claim for damages.

**C.    The Court Should Grant Daros's Motion for Summary Judgment Because Forestal Has Failed To Establish the Existence of a Genuine Issue For Trial.**

"The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  Forestal has not and cannot establish specific facts showing that there is a genuine issue for trial here.  <u>See</u> <u>Connors v. Fawn Mining Corp.</u>, 30 F.3d 483, 489 (3d Cir. 1994)(internal citations omitted). Simply stated, Forestal has wholly failed to meet its burden of proof and summary judgment in favor of Daros, is, thus, warranted.

Plaintiff's original complaint against Daros was filed in 2002. After more than three years of litigation and the completion of discovery, Forestal has failed to produce evidence sufficient to establish a prima facie claim for breach of contract. Forestal's claim rests entirely on unsigned invoices created by Forestal and on a deficient certification – neither of which identifies which of the invoices produced by Forestal are unpaid, due and owing. Forestal's claim therefore fails as a matter of law, as there are no genuine or material facts in dispute and no evidence that would permit a rational fact finder to rule in Forestal's favor. As such, Daros should be granted summary judgment.

## CONCLUSION

Forestal's claim not only fails under the CISG, but also fails as a matter of fact because it is based on an incomplete and fatally flawed accounting of Forestal's books and records as they relate to Daros. Where, as here, the evidence does not present a genuine issue of material fact, summary judgment is warranted. As such, Daros respectfully requests that this Court enter summary judgment in favor of Daros and against Forestal, and dismiss Forestal's Complaint with prejudice.

/s/ Daniel Mateo

Daniel Mateo (DM-3673)
**REED SMITH LLP**
Attorneys for Defendant
Daros International, Inc.

Dated: