NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| FORESTAL GUARANI, S.A., : | |
| Plaintiff, : | |
| : | Civil Action No. 03- 4821 (JAG) |
| v. : | |
| : | **OPINION** |
| DAROS INTERNATIONAL, INC., : | |
| Defendant. : | |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on a motion by Defendant, "Daros International, Inc." ("Daros" or "Defendant"), seeking summary judgment against Plaintiff, "Forestal Guarani, S.A." ("Forestal"or "Plaintiff"), pursuant to Fed. R. Civ. P. 56. For the reasons stated below, Defendant's motion is granted.

### I. FACTUAL BACKGROUND

Forestal is an Argentinean corporation, with its principal place of business in Misiones, Argentina. Forestal manufactures, repairs, finishes, and sells lumber products, including wooden "finger-joints." Daros is a New Jersey-based import-export corporation, with its principal place of business in Cherry Hill, New Jersey.

In or about 1999, Daros and Forestal entered into a verbal agreement,[1] by which Daros

---

[1] There is no dispute that there is no written contract between Forestal and Daros. See Certification of Daniel Mateo in Support of Defendant's Motion for Summary Judgment ("Mateo Cert."), Ex. A at 68:14-24; 152:11-14; Ex. B at 36: 9-13; Ex. C at 106: 23-25, 107:1.

1

agreed to sell Forestal's wooden finger-joints to third-party purchasers in the United States. Forestal alleges that, pursuant to this agreement, Forestal shipped $1,857,766.06 worth of finger-joints to Daros, and, in turn, Daros remitted a total of $1,458,212.35 in payments for the finger-joints. At stake now is the remaining $419,553.71.[2]

On April 12, 2002, Plaintiff filed a complaint for breach of contract in the Superior Court of New Jersey, Bergen County. Thereafter, Daros removed the action to federal court, asserting federal question jurisdiction, pursuant to the United Nations Convention on Contracts for the International Sale of Goods, 15 U.S.C. App. (the "CISG").[3]

During the discovery period, Daros served Forestal with Interrogatories and a Request for the Production of Documents. Forestal failed to respond timely and adequately to Daros' discovery requests. Magistrate Judge Haneke entered an Order on June 7, 2004, mandating that Forestal comply fully with Daros' discovery requests by June 18, 2004. Forestal did not respond to Daros' discovery requests until June 30, 2004. Due to Forestal's repeated discovery deficiencies, on October 5, 2004, this Court ordered Forestal to pay Daros $5,037.69 in discovery sanctions, and to respond adequately to Daros' discovery requests. To date, Forestal has yet to respond fully to Daros' document requests.

On June 5, 2005, Daros moved for summary judgment on the following grounds: (1) as a

---

[2] Daros correctly notes, without conceding liability, that the actual figure allegedly owed is $399,553.71 ($1,857,766.06-$1,458,212.35). See Daros' April 7, 2006 letter brief, p. 4.

[3] Daros properly asserts that this contract dispute falls within the province of the CISG, and was removable to federal court. Federal district courts exercise proper subject matter jurisdiction over every civil action that arises under a treaty of the United States. 28 U.S.C. § 1331(a). The CISG, ratified by the United States Senate in 1986, creates a private right of action in federal court. BP Oil Intern. v. Empresa Estatal Petoleos de Ecuador, 332 F.3d 333, 336 (5th Cir. 2003) (citing Delchi Carrier v. Rotorex Corp., 71 F.3d 1024, 1027-28 (2d Cir. 1995)).

2

matter of law, Forestal's claims are barred under the CISG, as amended by Argentina, which requires that all contracts for the sale of goods be in writing; and (2) Forestal failed to produce any credible evidence to substantiate its breach of contract claim.

On February 3, 2006, this Court entered an order denying Defendant's motion for summary judgment, and ordering the parties to appear for a status conference. The status conference took place on March 6, 2006. There, this Court directed the parties to submit supplemental briefing addressing five questions of law regarding the CISG:

1. Does the UN Convention on Contracts for the International Sale of Goods govern this dispute?

2. Are any of the exceptions contained in the CISG applicable to the instant action?

3. What effect does the application of the CISG Treaty have on this dispute?

4. Does the Treaty preempt State law causes of action?

5. Does the CISG Treaty provide the exclusive remedy to Forestal in this dispute?

The parties submitted responses to this Court's request for supplemental briefing. After reviewing the law and the submissions of the parties, this Court holds that there exists no genuine issue as to a material fact, and that Defendant prevails, as a matter of law, regarding Plaintiff's claim for breach of contract.[4]

---

[4]Forestal raises, for the first time, in its opposition brief, a common law claim for quantum meruit. See Forestal's April 6, 2006 letter brief, p. 7. Plaintiff's claim fails as a matter of law. It is undisputed that the CISG governs this action. Further, the CISG, a treaty of the United States, preempts state contract law and common law, to the extent that those causes of action fall within the scope of the CISG. U.S. CONST. art. VI ("The Supremacy Clause"); see also Vlero Mkt. & Supply Co. v. Greeni Oy & Greeni Trading Oy, 373 F. Supp. 2d 475, 480 n. 7 (D.N.J. 2005), rev'd on other grounds, 242 F. App'x. 840 (3d Cir. 2007). Thus, Forestal's original state law claim for breach of contract, and its newly raised claim for quantum meruit, are both preempted by the CISG.

3

## II. STANDARD OF REVIEW

Summary judgment is appropriate under Fed. R. Civ. P. 56(c), when the moving party demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23; Cascara v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Justofin v. Metro. Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004). This Court views "the facts in the light most favorable to the nonmoving party and draw[s] all inferences in that party's favor." Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (internal citation omitted). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence ...". Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

When the moving party has the burden of proof on an issue at trial, that party has "the burden of supporting their motions 'with credible evidence ... that would entitle [them] to a directed verdict if not controverted at trial.'" In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331); see also United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir.1991) ("When the *moving* party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it ... must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." (emphasis in original) (internal citations omitted)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden

on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). The non-movant cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

### III. THE CISG

The CISG is an international agreement that governs the formation of international sales contracts, as well as the rights and obligations of the parties. Ratified by both the United States and Argentina, amongst other countries, the CISG governs contracts for the sale of goods between parties whose places of business are in these different nations. See 15 U.S.C. App., Art. 1(1)(a). "A signatory's assent to the CISG necessarily incorporates the treaty as part of that nation's domestic law." BP Oil, 332 F.3d at 337. Parties to a contract normally governed by the CISG may, nevertheless, include an alternative choice of law provision. See 15 U.S.C. App., Art. 6; see also BP Oil 332 F.3d at 337 ("As incorporated federal law, the CISG governs the dispute so long as the parties have not elected to exclude its application."). The inclusion of an

5

alternate choice of law provision must, however, be announced explicitly in the contract.  Id.  If, as is the case here, the agreement is silent as to choice of law, the CISG applies if both parties are located in signatory nations.  See Delchi Carrier SpA v. Rotorex Corp., 71 F.3d 1024, 1027 n. 1 (2d Cir. 1995).

      The purpose of the CISG can be inferred from its introduction, which provides that: "the adoption of uniform rules which govern contracts for the international sale of goods and take into account the different social, economic and legal systems would contribute to the removal of legal barriers in international trade and promote the development of international trade."  15 U.S.C. App.  To that end, the drafters of the CISG created Article 11, which provides that "[a] contract of sale need not be concluded or evidenced by writing and is not subject to any other requirement as to form.  It may be proved by any means, including witnesses."  15 U.S.C. App., Art. 11.  Thus, the default rule under the CISG is that parties to contracts governed by the CISG are not required to evidence their agreements in writing.  Rather, pursuant to Article 11, those contracts are enforceable in oral form.

      In spite of its free form spirit, the CISG allows its signatories to opt-out of Article 11, and require written contracts, by means of an Article 96 reservation or declaration.[5]  See 15 U.S.C.

---

[5] Article 96 provides, in relevant part, that:

> A Contracting State whose legislation requires contracts of sale to be concluded in or evidenced by writing may at any time make a declaration ... that any provision of article 11 ... of this Convention, that allows a contract of sale or its modification or termination by agreement or any offer, acceptance, or other indication of intention to be made in any form other than in writing, does not apply where any party has his place of business in that State

15 U.S.C. App., Art. 96.

App., Art. 96.  In its ratification of the CISG, Argentina exercised its Article 96 reservation option, and did not adopt Article 11.  Thus, as ratified by Argentina, the CISG provides that "a contract of sale ... to be made in any form other than in writing does not apply where any party has [its] place of business in the Argentinean Republic."  <u>CISG Contracting States and Declarations Table</u>, 16 J.L. & Com. 371 (1997).

## IV. ANALYSIS

The parties, citizens of the United States and Argentina, agree that the CISG governs the contract at issue in this dispute.  The parties dispute whether the CISG, as adopted by Argentina, requires their contract to be evidenced by writing to be enforceable.  Defendant asserts that the absence of a written contract, in the instant matter, violates the CISG, as ratified by Argentina.  Defendant's June 9, 2005 Moving Brief.  As a result, Daros argues, Forestal's action for breach of contract, based on a verbal agreement, is barred under the CISG.  Id.  Plaintiff contends that the CISG, as adopted by Argentina, does not nullify all non-written contracts, and in the alternative, that the CISG would not permit the "unjust retention of funds which otherwise are required to be paid."  Declaration of Eugene Banta in Opposition to Defendant's Motion for Summary Judgment ("Banta Decl.") at 7-8.  Plaintiff posits that "[s]uch a determination would have created even greater turmoil in the world of International Trade than the subject Treaty sought to eliminate of (sic) at least reduce."  Id.

The issue before this Court is whether a verbal agreement, the parties to which are citizens of signatory nations, is enforceable, where one party is from a state that has made an Article 96 reservation to Article 11 of the CISG.  This Court turns to the text of the CISG for guidance.  See <u>Delchi Carrier</u>, 71 F.3d at 1027-28 (2d Cir. 1995)  ("Because there is virtually no

caselaw under the Convention, we look to its language and to 'the general principles' upon which it is based." Id. (quoting 15 U.S.C. App., Art. 7(2)).

Although the CISG has been in force for nearly two decades, there still are few U.S. decisions interpreting the Convention. In its review of the case law, this Court has found only one decision addressing the instant issue, Zhejiang ShaoxingYongli Printing & Dyeing Co., v. Microfleck Textile Group Corp., 2008 WL 2098062 (S.D. Fla. May 19, 2008). There, the district court also considered the text of the CISG, and held that because the People's Republic of China, a CISG signatory, made an Article 96 reservation to Article 11, "the Chinese Declaration require[d] all agreements to be in writing to be enforceable." Id. at *3

Likewise, Argentina's assent to the CISG, and its further declaration under Article 96 to opt out of Article 11, indicates that a written contract is required where one of the contracting parties has its principal place of business in Argentina. The argument that Forestal urges on this Court, that is, to disregard the plain language of the CISG and Argentina's Article 96 declaration, is unpersuasive. As explained above, the CISG drafters' goal was to remove impediments to international commerce and contracting, by allowing for more liberal enforcement of oral agreements. However, the same drafters allowed individual nations to decide autonomously, whether they wished to enforce oral agreements, or require written contracts. The CISG, as adopted by Argentina, and thus, as incorporated into Argentinean law, provides that Article 11's freedom from form principles do not apply to contracts between Argentinean citizens and citizens of other signatory nations. Such contracts must be in writing.[6]

---

[6] In the international legal community, there is, however, a differing view as to what law a court should employ in interpreting such an agreement. See Louis F. Del Duca, Implementation of Contract Formation Statute of Frauds, Parol Evidence and Battle of Forms CISG Provisions in

In this case, Forestal admits that there was no writing, and advances no availing argument as to why this Court should enforce the alleged agreement. As a result, Plaintiff's claim for breach of contract must necessarily fail.

Notwithstanding Forestal's failure to conform with the formal writing requirements of the CISG, New Jersey, and Argentina, Forestal fails to produce any evidence of a contract, in any form, with Daros. In support of its claim, Forestal submitted unsigned invoices on Forestal company letterhead. Cf. First Valley Leasing, Inc. v. Goushy, 795 F. Supp. 693, 696 (D.N.J. 1991) (invoice on letterhead deemed a "signature" under N.J. Stat. Ann. § 12A:1-201(39) and Comment 39, only where the party disclaiming liability is the "signatory" party, i.e., the source of the invoice ). Forestal does not identify which invoices Daros allegedly failed to pay. Nor do Forestal's invoices reference corresponding purchase orders, bear Daros' signature, or indicate Daros' acknowledgment and acceptance of such invoices as an agreement. Forestal has presented no proof that defendant received and accepted goods, for which there remained a balance due and owing.[7]

---

Civil and Common Law Counties, 25 J.L. & COM. 133, 138 (2005). Various international tribunals have not automatically applied the CISG, and required a writing only if, after a choice-of-law analysis, the court determines that the reserving nation's laws apply to the dispute. See Del Duca, supra, at 138-9 (noting that Austrian, Russian, and Ukrainian tribunals have adopted this choice-of-law analysis).

In the instant action, it is unnecessary to determine whether the CISG allows for this choice-of-law analysis. Applying the law of a forum results in the same outcome as would applying the CISG to the alleged contract. Both interested forums, New Jersey and Argentina require a writing. See N.J. Stat. Ann. § 12A:2-201 (requiring contracts for sale of goods for price of $500 or more to be in writing); see BP Oil, 332 F.3d at 337. ("A signatory's assent to the CISG necessarily incorporates the treaty as part of that nation's domestic law.")

[7]In support of its claim, Forestal submitted the certification of Gricelda Beatriz Zanek. See Banta Decl.; see also, Mateo Cert, Ex. D ("Certified Translation of the Zanek Certification").

Plaintiff has failed to produce evidence sufficient to withstand Defendant's motion for summary judgment.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is GRANTED.

Date: October 7, 2008

                                         S/Joseph A. Greenaway, Jr.
                                         JOSEPH A. GREENAWAY, JR., U.S.D.J.

---

Ms. Zanek, an accountant, certified that, upon review of Forestal's financial records, she concluded that Daros owed an outstanding balance to Forestal.

Forestal's president and CEO, Pedro Juan Lopez Vinader, also testified that Forestal's financial records could not be removed legally from Argentina and that copying them would be impractical and present an "enormous" burden on Plaintiff. See Mateo Cert., Ex. A at 129:17-23, 172:7-25, 173:1-8. Plaintiff, an Argentinean corporation, chose New Jersey as the forum to resolve this dispute, and should have anticipated these discovery issues.